## HENDRIX v. EMPLOYERS MUT. LIABILITY INS. CO. OF WISCONSIN.

### Civ. A. No. 2633.

United States District Court
E. D. South Carolina, Columbia Division.

Jan. 22, 1952.

See also 98 F.Supp. 84.

Thomas, Cain & Nettles, Columbia, S. C., for plaintiff.

Wise, Whaley & McCutchen, Columbia, S. C., for defendant.

WYCHE, Chief Judge.

This action was brought by the plaintiff to recover of the defendant the sum of $20,000 and expenses incurred in the defense and settlement of certain counterclaims brought against the plaintiff in the court of common pleas for Hampton County, South Carolina.

Plaintiff was the owner of a tract of timber lands and game preserve. Defendant is a liability insurer and had issued to the plaintiff a "comprehensive general liability" insurance policy. The claims made against the plaintiff arose out of an alleged altercation between the counterclaimants and one Clarence Smith, who was in the plaintiff's employ. Plaintiff called on the defendant to defend the counterclaims, but the defendant refused to do so. Plaintiff then defended and finally settled the three actions, and now sues for the amount expended in the settlement, together with attorney's fees.

By its answer, defendant denies the reasonableness of the amounts claimed, and further defends upon the grounds that the plaintiff breached the policy provisions requiring notice of the occurrence to be given as soon as practicable, and requiring process in all suits to be forwarded immediately to it; it further contends that, prior to the settlement of the counterclaim actions, certain words were stricken from the counterclaims changing them into different actions, no demand for defense of which was made upon the defendant.

The plaintiff and the defendant are residents of different states, and the matter in controversy exceeds the sum of $3,000, and this court has jurisdiction of the cause.

It is admitted that on March 2, 1949, defendant issued to plaintiff a comprehensive general liability policy; this policy was for one year and was renewed by a policy expiring March 2, 1951, with the same terms as the original policy. This policy required the defendant to pay on behalf of the plaintiff, " * * * all sums which the assured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person * * * ". The policy further required the defendant "to defend any suit against the assured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * * ".

The plaintiff was the owner of a large tract of land in Hampton County, South Carolina. Having determined to devote the land to reforestation and game preserve, plaintiff closed the land to hunting and took steps to enforce the restriction. Natives of the community had long been accustomed to hunting and fishing on the property without regard to the ownership; and, by putting an end to this practice, considerable ill-feeling in the county toward the plaintiff arose. The dispute was brought to a head when the plaintiff instituted an action for declaratory judgment to determine plaintiff's right to close a road used by hunters and fishermen across what plaintiff claimed to be his lands. Three of the defendants to this action interposed counterclaims, each for $100,000, damages, on account of an alleged assault and battery committed upon them by one Clarence Smith, who at the time was employed by the plaintiff. The counterclaims were served upon plaintiff's attorneys in the declaratory judgment suit. Notice was forwarded to the Employers Mutual Liability Insurance Company of Wisconsin, the present defendant, with the request that it take over the defense. This was refused, upon the stated ground that the counterclaims alleged that the wrongs were committed "pursuant to the direct instructions" of the insured, and hence were excluded from coverage. Plaintiff proceeded, alone, with the defense. Plaintiff's attorneys concluded that, despite their every effort to the contrary, the three counterclaim actions would be tried by a Hampton County jury. They also concluded, and I believe reasonably, that the cases were fraught with danger in view of the fact that there was a great deal of prejudice and some bitterness toward the plaintiff on the part of those from whom the jury would be drawn, and that the attorney for the counterclaimants would be able to play upon this feeling in an effort to secure large verdicts against the plaintiff. Accordingly, they concluded that the best defense of the actions would be a compromise.

Compromise negotiations were undertaken. These were very difficult, but after much effort, the attorneys for the plaintiff secured an offer by an attorney for the counterclaimants to settle the three counterclaims for the gross payment of $20,000.

Defendant was notified of this offer, and was advised that acceptance of the compromise was deemed the best thing to do in the circumstances; that unless the defendant agreed to take over the defense, the plaintiff felt required to accept the compromise offer rather than to allow the counterclaims to go to trial. Once again, defendant disavowed responsibility. Plaintiff then concluded settlement for $20,000, and paid this sum on August 14, 1950. He also incurred legal expense in the amount of $9,500, fees to his several attorneys. Of this amount, $7,000, had, prior to the trial, been paid, and the balance agreed to be paid.

Defendant heretofore moved to dismiss the complaint as failing to state a cause of action. This motion was denied by order dated June 5, 1951. Hendrix v. Employers' Mutual Liability Ins. Co., D.C., 98 F.Supp. 84. By this order, it was decided that the defendant was by its policy obligated to defend the present plaintiff against the subject counterclaims; that the settlement was not violative of plaintiff's obligations under the policy, in view of the circumstances;

and that the plaintiff was entitled to recover expenses reasonably incurred in the defense of the counterclaim actions.

As to reasonableness of the notice to the defendant, I find that on or about February 5, 1950, some altercation arose between one Clarence Smith, an employee of the plaintiff, and C. W. Jones, C. I. Jones, Jr. and Joe Stack; that the plaintiff herein was not apprised of this until C. W. Jones, C. I. Jones, Jr. and Joe Stack served plaintiff's attorneys with counterclaims against the plaintiff in the amount of $100,000 each on April 5, 1950; that plaintiff gave notice of the actions to the defendant on April 23, 1950.

 It is well settled in South Carolina that stipulations providing for notice, etc., to be given "as soon as practicable" or "immediately" mean that such be done with reasonable promptness under the circumstances. Edgefield Manufacturing Co. v. Maryland Casualty Co., 78 S.C. 73, 58 S.E. 969; Walker v. New Amsterdam Casualty Co., 157 S.C. 381, 154 S.E. 221. In the present case, the first notice to plaintiff of the event was the service of the counterclaims upon the plaintiff's attorneys in Columbia. The plaintiff resided at Hampton, South Carolina, hence it was necessary for the plaintiff to be advised by his attorneys of the situation and for him to advise them as to the insurer before they could notify the insurer. In view of the circumstances, I find that the action taken on behalf of the plaintiff was reasonably prompt, and complied with the policy provisions. While it might be questioned whether delay from February 5th (the alleged date of the occurrence) to April 23rd, would have been reasonable, the plaintiff cannot be charged with any delay other than from the time when he received notice of the occurrence and alleged claim, and this took place on April 5, 1950.

█ While the letter giving the defendant notice of the occurrence and of the service of the counterclaims did not include the original counterclaims themselves, copies of them were furnished as soon as requested by the defendant. Meantime, replies to the counterclaims were filed. I see nothing unreasonable in this: The purpose of the requirement that process be forwarded to the insurer "immediately" is to prevent prejudice to the insurer's defense of the action. Here it was necessary that responsive pleadings be filed in order to prevent judgment by default, which would have prejudiced the defense of the claims. I, therefore find that the plaintiff substantially complied with his policy obligation to "forward process" to the insurer with reasonable promptness.

█ Nor, can I agree with the contention of the defendant that the amount of the settlement was unreasonable. Of course, an insurer is not liable for the expense of compromising a claim which it was obligated to defend unless the compromise was reasonable, and defendant in its answer complained that the amount here paid was excessive. Twenty thousand dollars is a sizable sum. However, from the evidence presented, I have concluded that it was reasonable under the circumstances. I find that the plaintiff here was entirely able to respond to judgments up to the full amount sought in the three counterclaims. From the local situation, there was every reason to believe that he would be before a hostile jury, and there was every likelihood that large verdicts would be returned against him. He was represented by able counsel of many years' experience and their judgment is entitled to great weight. In the absence of proof to the contrary, a settlement is presumptive evidence of liability and the amount thereof. Elliott v. Casualty Ass'n of America, 254 Mich. 282, 236 N.W. 782; 21 Appleman, Insurance Law and Practice, page 131. Here, this presumption is buttressed by further evidence, and there is nothing in the record to point to a contrary conclusion. The insurer was advised as to the proposed settlement and was told that the assured felt impelled to accept it. No protest was made by the insurer as to the settlement or the amount. Having failed and refused to enter the cases and having made no protest against the settlement and having failed to show that the settlements, charges, and expenses were unreasonable, judgment should be rendered in favor of

the assured. Boutwell v. Employers' Liability Assurance Corp., 5 Cir., 175 F.2d 597, at page 601.

██ The point is made that the actions embodied in the counterclaims in effect jumbled causes of action for assault and battery, false imprisonment, and slander, and that on account of the presence in the counterclaims of allegations sounding in slander the defendant cannot be held liable for the full amount of settlement, the theory being that part of the settlement must of necessity be ascribed to the action for slander, which is not an action for "bodily injury" and for which the defendant is not liable. Had it been proven that the settlement represented a compromise of a potential liability judgment, which would have been excluded from the indemnifying agreement of the policy, I would be inclined to agree that the defendant would not be liable to the plaintiff for the amount paid in such settlement.

██ On the other hand, where one action contains claims upon various grounds, some within and some without the indemnity agreement, the insurance company must, under its agreement to defend, take charge of the entire suit. "Where an action of an injured person is based upon various grounds which are not within the terms of the policy, and on another which is within its terms, the situation does not justify an insurance company in declining to defend. * * *" Christian v. Royal Ins. Co., 185 Minn. 180, 240 N.W. 365, 366, 185 Minn. 180.

And the same rule applies to liability for damages recoverable from the assured by an injured person whose complaint jumbles grounds covered by the policy and those not covered. Lee v. Aetna Casualty & Surety Co., 2 Cir., 178 F.2d 750. In the case last cited, Judge Hand said, 178 F.2d at page 753: "It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover. This it did not do; it relied upon the complaint alone, and that did not limit the plaintiff's recovery to an injury arising from the insured's 'use' of an elevator. The Tenth Article did allege that 'through the negligence' of the insured the plaintiff was 'caused to fall * * to the pit of the shaft'; and the Twelfth Article alleged that the insured had allowed the 'premises occupied' by it to become dangerous, had 'invited' the plaintiff into a place of danger, and had 'so carelessly operated and maintained the aforementioned premises so (sic) as to render them unsafe and dangerous.' But all this is quite consistent with the insured's liability for a breach of its duty towards a 'business guest,' who had entered the ground floor, and fallen into the pit because the shaft was open and unguarded. Such a recovery the policy would have covered, and the defendant was bound to defend the suit as it stood. Since all the facts, including the damages, were conceded, the judgment was right upon the second count, as well as upon the first."

██ The same rule applies to sums paid by an assured in compromise of suits, some of the allegations of which are within and some without the policy coverage. Gulf Portland Cement Co. v. Globe Indemnity Co., 5 Cir., 149 F.2d 196. Indeed, it appears that compromise settlement is regarded as defense of an action, and that if an insurer declines to defend its assured against an action containing grounds both within and without the indemnity coverage, the insurer is, under its obligation to defend, liable to the assured for the entire amount paid in compromise of the action. Boutwell v. Employers' Liability Assurance Corp., supra, 5 Cir., 175 F.2d 597.

The case of Globe Navigation Co. v. Maryland Casualty Co., 39 Wash. 299, 81 P. 826, indicates that the court there would not hold an insurer liable in such circumstances for expense incurred by the insured which was not necessary in the defense of that part of the claim covered by the policy; however, that case expressly held that the insurer was liable for the entire expense of the defense unless the record disclosed what expense was unnecessary in the defense of the claim covered.

In the present case, the slander allegations in the counterclaims were never men-

tioned by the defendant as a ground for its refusal to defend liability. When apprised of the proposed settlement and informed that the assured would accept the same unless it accepted the defense of the actions, the defendant again made no reference to the slander allegations. At the trial the defendant offered no evidence which would indicate that the slander allegation was regarded as a substantial element of the counterclaims. From the counterclaims themselves, it is doubtful whether the slander allegations would have, if proven, supported a recovery, certainly of more than nominal damages. It will be noted that the slander alleged was that of calling the counterclaimants trespassers; while, by statute, it is a misdemeanor in South Carolina for one to trespass upon the lands of another to hunt or fish, it is doubtful whether the imputation of such an offense is actionable *per se*, and no special damage is alleged.

On the basis of the entire record, I find that the primary danger from the counterclaim actions, and the primary cause for their settlement, was the allegations of assault and battery.

■ As a part of the settlement, the counterclaimants consented to an order striking certain allegations from the counterclaims. Since the defendant's obligation to defend was established by the counterclaims as originally filed, and since the defendant was already in breach of that obligation, subsequent amendment to the pleadings could have no effect upon the defendant, unless it was such as to show that the claim for which recovery was sought, and settlement for which was paid, was one without the coverage of the contract. Here, the amendments did not change the actions from the claim for which they were originally brought.

■ There remains only the question of the reasonableness of the attorney's fees. It is undisputed that the plaintiff here has incurred legal expense in the amount of $9,500, of which $7,000 has already been paid, and the remainder agreed to be paid. While a great deal of work was involved, and the evidence discloses that a good result was obtained in the disposition of the three counterclaims amounting to $300,000,

I have concluded that $7,500 is reasonable compensation for the attorneys.

It is, therefore, ordered that the plaintiff have judgment against the defendant in the sum of $20,000 with interest thereon from August 14, 1950, together with the further sum of $7,500 attorney's fees.