## YOUGHIOGHENY & OHIO COAL CO. v. EMPLOYERS' LIABILITY ASSUR. CORP., Limited.

### Civ. A. No. 2093.

United States District Court
D. Minnesota, Third Division.

Aug. 26, 1953.

Mandt Torrison, of Bundlie, Kelley, Finley & Maun, St. Paul, Minn., for plaintiff.

Reginald Ames, of Cummins, Cummins, Hammond & Ames, St. Paul, Minn., for defendant.

BELL, District Judge.

This is an action by the Youghiogheny and Ohio Coal Company as plaintiff against

the Employers' Liability Assurance Corporation, Limited as defendant, to secure reimbursement from the defendant for the amount paid in settlement of a personal injury action, together with the attorneys' fees and costs imposed upon the plaintiff by virtue of its defense of the case after defendant refused defense on the ground of no coverage.

The controversy arises upon a Manufacturer's and Contractor's Liability Policy, issued to the plaintiff by the defendant for a one-year period from December 31, 1948 to December 31, 1949, covering certain hazards in the operation of plaintiff's business in dealing in coal, fuel, oil and wood at its premises in Superior, Wisconsin.

On August 25, 1949, during the policy period, plaintiff accepted from the Great Northern Railway Company a Pere Marquette freight car at its premises in Superior, Wisconsin. The car was prepared for loading and was loaded with coal by the plaintiff at its docks as a necessary and incidental operation to the use of the insured premises. After being loaded, the car was delivered by plaintiff to the Great Northern Railway Company which moved the car to Princeton, Minnesota, and spotted it on a siding on the 27th day of August, 1949. On that day, one Louis John Otto Burnett attempted to open one of the sliding doors of the car. While so doing, the door left its moorings and crashed down upon Burnett, injuring him severely.

Burnett brought an action against this plaintiff, the Great Northern Railway Company and other defendants, containing allegations of negligence on the part of this plaintiff, including the following:

"That said coal company carelessly and negligently accepted said railroad freight car from its co-defendants without making a thorough inspection as to the condition of said car, prior to loading the same.

"That said coal company knew, or in the exercise of reasonable or ordinary care should have known, that said railroad freight car was in bad order and unfit for the transportation for coal * * *.

"That said coal company knew, or in the exercise of reasonable or ordinary care should have known, that in the type of car furnished it by those co-defendants there is required to be erected and securely fastened a false door, so as to prevent the bulk coal from pressing against the outside sliding doors of said car.

"That said defendant coal company carelessly and negligently failed and neglected either to install the false door or sheeting between the outside door and the bulk coal proper, or carelessly and negligently failed and neglected to properly secure said false door or sheeting so that said bulk coal would not bear its weight in whole or in part directly against the outside of sliding door of said car."

Plaintiff promptly tendered the defense of the action to defendant. Representatives of plaintiff and defendant conferred with respect thereto, defendant contending that there was no coverage under the policy, but, with obvious misgivings as to the meaning of its own policy language, offering to defend if plaintiff would sign an agreement to the effect that defendant was not liable to respond on any judgment rendered against plaintiff. This was not acceptable to plaintiff and the parties had further negotiations relative to defense of the action. An agreement was prepared by defendant's attorneys, reserving to the defendant the right to contend that there was no coverage under the policy, and that in defending, it was not waiving its right to so dispute coverage. Defendant refused to defend unless such an agreement were executed. This agreement was also unsatisfactory to the plaintiff, with the result that it retained its regular counsel to defend the case. During the course of the trial, the case was settled for $45,000, toward which plaintiff contributed the sum of $7,500. That settlement was recommended and approved by counsel for plaintiff, and the court has found it to have been a provident settlement. Plaintiff reasonably and necessarily incurred expense for defense and settlement of the action in the sum of $4,825.50 for costs, disbursements and attorneys'

fees. Plaintiff demanded payment from defendant of the sums so paid and expended, amounting in total to $12,325.50. Defendant refused to make such payment.

Although defendant asserted in its answer a lack of timely notice of the accident, it has conceded that it waived any requirement of such notice by contending that there was no coverage under the policy within the rule of the following cases: John Alt Furniture Co. v. Maryland Casualty Co., 8 Cir., 88 F.2d 36; Hickey v. Wisconsin Mutual Insurance Co., 238 Wis. 433, 300 N.W. 364; Greulich v. Monnin, 142 Ohio St. 113, 50 N.E.2d 310, 149 A.L.R. 477.

Defendant concedes that plaintiff's liability would have been covered by the contract of insurance except for two exclusionary provisions in the policy. Defendant first contends that exclusion (a) applies. This exclusion, stripped of irrelevant matter, is as follows:

"This policy does not apply; (a) under division I. of the definition of Hazards to * * * vehicles of any kind * * *, or the loading or unloading thereof while away from the premises. * * *."

In short, defendant contends that the freight car which was involved was a vehicle and was away from the premises at the time of Burnett's injury. Defendant next contends that if Exclusion (a) is not applicable, then Exclusion (d) eliminates coverage. Exclusion (d) stripped of its irrelevancies, reads as follows:

"This policy does not apply: (d) under Divisions 1 and 4 of the Definition of Hazards, to liability with respect to which insurance is or can be afforded under Division 3 of the Definition of Hazards."

Division 3 of the Definition of Hazards, stripped of its irrelevancies, reads as follows:

"Division 3. Products. The handling, or use of, or the existence of any condition in goods or products * * * handled or distributed by the named insurer, if the accident occurs after the insured has relinquished possession thereof to others, and away from the premises; and operations covered under division 1 and 4 of the Definition of Hazards, *other than* pick-up and delivery and existence of tools, uninstalled equipment and abandoned *or unused* materials, if the accident occurs after such operations have been completed or abandoned at the place of occurence and away from such premises."

Defendant contends that plaintiff could have, but did not, purchase insurance under this clause, covering the liability in question. Defendant further appears to contend that the liability resulted from the handling of a product handled or distributed by the named insured, and that since the accident occurred after the plaintiff's operations had been completed and away from the premises, the product's liability coverage would have applied.

Plaintiff, on the other hand, contends that the allegations of Burnett's complaint against it asserted a cause of action based upon hazards covered by the insurance policy and arising upon the premises; that its potential liability did not arise from any negligent acts in connection with the operation of a vehicle while away from the premises or liability resulting because of any hazard occasioned by any negligent handling of vehicles, whether loading or unloading, while away from the premises. Plaintiff further contends that the products liability coverage is in no way involved. It contends that the Pere Marquette freight car, the unsafe condition of which was alleged to have caused this accident, was not a product handled or sold by plaintiff, and that it did not involve *unused materials,* and that Burnett's complaint stated a cause of action which did not result from any condition or characteristics of the coal handled or distributed by the insured.

Defendant has further urged that plaintiff had the burden of alleging and establishing its own negligence and the causal relation of such negligence to the injury to Burnett in order to sustain a recovery against this defendant. Plaintiff, on the other hand, contends that, assuming coverage, its settlement established a prima facie case, and that the burden shifted to the de-

fendant to prove that the settlement was improvident, or that there was no liability upon the plaintiff.

The insuring agreement provided as follows:

"I. To pay on behalf of the insured, all sums which insured shall become obligated to pay by reason of the liability imposed upon him by law for damages caused by accident and arising out of the hazards hereinafter defined. * * * Definition of Hazards. Division 1. Premises-Operations. The ownership, maintenance or use of the premises and all operations during the policy period which are necessary or incidental thereto. * * *

"II. It is further agreed that as respects insurance afforded by this policy, the company shall (a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *."

The question of coverage is to be determined from the allegations in the complaint against the insured. The fact that the complaint may be spurious, fraudulent or false will not absolve the insurer of its duty to defend, even though objective truth would indicate that there is no liability on the part of the insured. Socony-Vacuum Oil Co. v. Continental Casualty Company, 144 Ohio St. 382, 59 N.E.2d 199; Bloom-Rosenblum Kline Co. v. Union Indemnity Co., 121 Ohio St. 220, 167 N.E. 884; Luchte v. State Automobile Mutual Ins. Company, 50 Ohio App. 5, 197 N.E. 421; Hardware Mutual Casualty Company v. Mason-Moore-Tracy, Inc., D.C., 96 F.Supp. 861.

■ A provision whereby an insurer agrees to defend even groundless suits, will be construed against the insurer, and insurer will not be given an option of deciding whether the action was proper or sufficient on its face. Grand Union Stores v. General Accident Fire & Life Insurance Corporation, 163 Misc. 451, 295 N.Y.S. 654, affirmed 251 App.Div. 810, 298 N.Y.S. 187.

■ Nor does an insurance company, under a duty to defend, have the right to insist that the insured first sign a nonwaiver agreement. Goldberg v. Lumber Mutual Casualty Insurance Company, 297 N.Y. 148, 77 N.E.2d 131. See also Wisconsin Transportation Company v. Great Lakes Casualty Co., 241 Wis. 523, 6 N.W.2d 708.

■ Even though a complaint against the insured asserts a cause of action upon various grounds which are not within the coverage of the policy, the duty to defend arises from any allegations setting forth the cause of action which might be within the coverage. Christian v. Royal Insurance Company, 185 Minn. 180, 240 N.W. 365; Boutwell v. Employers Liability Assurance Corporation, 5 Cir., 175 F.2d 597.

Defendant's contention that the accident to Burnett was within exclusion (a) of the policy cannot be sustained. Defendant has failed to distinguish between the meaning of the word "hazards" and the "accident" or "injury" resulting from such hazard. In Hough v. Contributory Retirement Appeal Board, 309 Mass. 534, 36 N.E.2d 415, 417, 418, this distinction has been clearly stated:

"An 'accident' is an unexpected, untoward event which happens without intention or design, and a 'hazard' is a danger or risk lurking in a situation which by change or fortuity develops into an active agency of harm."

See also, Caminetti v. Guaranty Union Life Ins. Co., 52 Cal.App.2d 330, 126 P.2d 159, 163.

■ The insuring agreement in the instant case insures against certain hazards, and insofar as the exclusions become applicable, they must exclude hazards, rather than injuries or accidents. Thus, exclusion (a) must be construed to apply to the nature and place of the hazard rather than to the place of an accident or injury. The negligence alleged by Burnett against this plaintiff was in the failure to properly inspect, and in accepting and using a defective freight car. This hazard necessarily arose at the insured premises and as an incident to their use and did not occur at the place of unloading a vehicle while away from the premises.

■ With respect to defendant's contention that the products liability coverage

476

which plaintiff could have, but had not, purchased would have granted it protection, the short answer is that if the injury to Burnett resulted from a defective freight car or in negligence in failing to discover and remedy such defect or even in the faulty preparation of the car prior to loading, as alleged by Burnett, no defective condition in the products handled by the plaintiff was involved. Certainly, the freight car was not a product of the insured.

█ Defendant relies primarily in support of its contention in this respect upon Employers Mutual Liability Insurance Company v. Underwriters at Lloyds, D.C., 80 F.Supp. 353. The cases are readily distinguishable. In that case, the product involved was rolls of paper weighing approximately 500 pounds. The paper was shipped and when the consignee's workman opened the door of the car a roll of paper fell on him and killed him. The court found that death was caused by the negligent loading of the paper, in that it was not properly bound and secured. Thus, the injury was caused by the product itself. The liability resulted from improper "handling" by insured. The court construed the meaning of the word "handled", as used in these policies against the insurance company, under the familiar rule that ambiguities must be resolved against the company whose language they are. Dunnell's Minnesota Digest, Vol. 3, Sec. 4659. See also A.L.R. Digest, Vol. 7, p. 86 et seq. Thus, in the Lloyds case, the court was construing what it considered ambiguous language of the products liability coverage against the insurance company so as to effect coverage and defeat the exclusion. In the instant case, the same rule of construction would require us to construe that same ambiguity against the contentions of this defendant. Uncertainties must be resolved so as to effectuate coverage and prevent forfeiture.

However, it is not necessary to rely upon such rules of construction because it is clear that at least some of the allegations of Burnett's complaint with respect to the liability of this plaintiff had nothing to do with the products of the insured. They involved negligently inspecting, accepting and preparing a freight car for use in shipping a product, but did not involve any inherent dangers in the product, or any alleged negligence in connection with the actual handling of the product itself. The allegations of Burnett charged an injury resulting from a defective freight car negligently accepted and used by plaintiff.

█ With respect to defendant's contention that plaintiff had the burden of establishing its own negligence and the causal relationship of that negligence to the injury to Burnett, the law is otherwise. If an insurance company has refused to defend, and the case against the insured has been settled by it, that settlement is presumptive evidence that there was liability for the amount of the settlement and the insurer has the burden of showing otherwise. Butler Brothers v. American Fidelity Co., 120 Minn. 157, 139 N.W. 355, 44 L.R.A.,N.S., 609; Mendota Electrical Co. v. New York Indemnity Co., 169 Minn. 377, 211 N.W. 317; Klemmer v. Ohio Casualty Company, 188 Minn. 209, 246 N.W. 896. See also Elliott v. Casualty Association of America, 254 Mich. 282, 236 N.W. 782; Hendrix v. Employers Mutual Liability Insurance Co. of Wisconsin, D.C., 102 F. Supp. 31; Employers Mut. Liability Ins. Co. v. Hendrix, 4 Cir., 199 F.2d 53. This burden the defendant did not attempt to meet. The competent attorneys who defended plaintiff in the Burnett case testified that the settlement was provident and reasonable; that the costs, expenses and attorneys' fees were necessary and reasonable, and the court has so found. Plaintiff is entitled to recover the sum of $12,325.50 together with interest, costs and disbursements.