SERVICE WELDING & MACHINE COM-
PANY, Inc., and Great American In-
demnity Company of New York, Plain-
tiffs-Appellants,

v.

MICHIGAN MUTUAL LIABILITY COM-
PANY OF DETROIT, MICHIGAN,
Defendant-Appellee.

No. 14831.

United States Court of Appeals
Sixth Circuit.

Dec. 28, 1962.

James G. Bowman, Louisville, Ky., Richard I. McIntosh, Claude S. Eddleman, Jr., Louisville, Ky., on brief, for appellants.

Gavin H. Cochran, Marshall, Cochran, Heyburn & Wells, Louisville, Ky., for appellee.

Before McALLISTER, Circuit Judge, BOYD, District Judge, and DARR, Senior District Judge.

DARR, Senior District Judge.

On and before February 11, 1955, one plaintiff-appellant, Service Welding & Machine Company, Inc. (Service Welding) owned two insurance policies which were in full effect, one being a fleet automobile liability policy issued by the other plaintiff-appellant, Great American Indemnity Company of New York (Great American), with minimum coverage of $25,000, and the other a public liability policy issued by defendant-appellee, Michigan Mutual Liability Company of Detroit, Michigan (Michigan Mutual), with minimum coverage of $100,000.

On February 9, 1955, on Service Welding's premises in Louisville, Kentucky, Service Welding's flat bedded tractor-trailer type truck was loaded with twenty-three cylindrical metal tanks. The tanks were secured on the bed of the trailer by chains. The tanks had been sold by Service Welding F. O. B. destination and consigned to Gulf Refining Company, at its bulk plant in Knoxville, Tennessee. The truck loaded with the tanks left Louisville on the morning of February 10, 1955, and arrived at Gulf's

bulk station in Knoxville late in the same afternoon. Gulf's employees had gone home for the day. About 7 o'clock in the morning on February 11, 1955, Service Welding's driver, a Mr. Bell, drove the truck into the yard of Gulf's bulk station in Knoxville and delivered his load and gave the bill of lading therefor to Gulf's terminal superintendent. Thereupon the unloading went forward by Gulf's employees, one of whom was Mr. John B. Acuff. In the course of the unloading and after the chains had been removed or loosened, Mr. Acuff climbed upon the bed of the trailer and moved one tank for the purpose of inspection, whereupon other tanks began to slide or fall toward him, pushing him slightly. In stepping back to avoid the danger, his foot became enmeshed in a hole in the truck bed and he could not immediately get his foot out of the hole. He leaned far backward to avoid the oncoming tanks, finally twisting his foot out of the hole. His body position, when his foot was released, resulted in his falling from the back of the truck. Mr. Acuff received serious injuries in this accident. Mr. Bell, the driver, called Mr. Greer, President of Service Welding, on the day of the accident, reporting the accident and telling him how it occurred.

On Febuary 15, 1955, Mr. Hemstreet, the Division Manager for Gulf Refining Company, wrote to Service Welding a detailed recitation of all events happening at the time of the accident.

On February 15, 1955, Service Welding gave notice to Great American concerning the accident. Thereupon Great American made a thorough investigation of the circumstances and events relative to the accident and the extent of the injuries to Mr. Acuff.

On January 31, 1956, John B. Acuff instituted suit against Service Welding in the United States District Court at Louisville in which he sought judgment in the sum of $100,000.[1] Service Weld-

ing promptly notified Great American of Mr. Acuff's suit, transmitting to Great American copies of the summons and complaint. Great American took up the defense for Service Welding by filing an answer and preparing for trial by further investigation and by discovery methods. The negligence charged in Mr. Acuff's complaint was the maintaining and using of the defective trailer, particularizing that the truck was defective in that it had large holes in the bottom of the bed causing the tanks to roll or fall and that one of the holes became a trap in which Mr. Acuff's foot was caught.

On August 22, 1956, Mr. Acuff interposed a motion seeking to file an amended complaint. The motion was allowed on September 16th. The amended complaint adopted by reference the allegations made in the original complaint and charged further as an element of negligence the improper loading of the trailer on Service Welding's premises in Louisville.

After receiving a copy of the amended complaint, Service Welding concluded that there might be liability under Michigan Mutual's policy. On August 29, 1956, Service Welding's personal counsel gave written notice to Michigan Mutual of the Acuff accident and forwarded a copy of the amended complaint. Prior to the letter and on August 27, 1956, Mr. Greer talked on the telephone with a representative of Michigan Mutual pertaining to the coverage under its policy. This was the first notice Michigan Mutual had concerning the Acuff accident, the law suit in Louisville, and the law suit in Knoxville. Michigan Mutual did not otherwise have knowledge of the accident or of the law suits.

Michigan Mutual declined to defend the law suit or indemnify Service Welding on two grounds: (1) That the policy in question provides no coverage for the alleged accident out of which the litiga-

---

1. On February 7, 1956, Mr. Acuff filed a similar suit in the United States District Court at Knoxville, Tennessee, which was later dismissed for lack of proper service. The dismissal was before August 26, 1956.

tion grew and (2) Service Welding's breach of the "Notice of Accident" and "Notice of Claim or Suit" conditions of Michigan Mutual's policy.

After negotiations and on November 12, 1956, Mr. Acuff's suit was fully settled by the payment of $30,000. Great American paid the sum of $25,000, the limit of its liability under its policy, and Service Welding paid $5,000. Notice had been given to Michigan Mutual of the settlement with the request that it pay its proportionate share. This request was declined by Michigan Mutual.

Thereafter, the law suit here under consideration was instituted in a state court and removed to federal court. The case seeks a judicial declaration requiring Michigan Mutual to pay its pro rata share of the amount paid in the settlement and for the expenses.

Michigan Mutual made defense by filing a motion for summary judgment.

All the facts were stipulated, including by reference the entire record in the Acuff case and a number of affidavits and letters. The stipulation reveals that the parties agreed that the settlement was provident.

The questions in the court below and now for decision here are (1) whether the proper notices of the accident and of the law suits were given to Michigan Mutual and (2) whether the policy covered the injuries for which the settlement was made.

The Michigan Mutual policy contained provisions requiring the insured to give notice of an accident "as soon as practical" and to give notice of a law suit "immediately." The District Judge was of the opinion that, under Kentucky law, the notice given by Service Welding to Michigan Mutual of the accident was as soon as practical. The District Judge pointed out the Kentucky law to be as announced in the case of Southern Surety Co. of New York v. Heyburn, 234 Ky. 739, 29 S.W.2d 6, to the effect that notice is sufficient to fix liability on the insured " * . * * when there has been such an occurrence or accident as would lead the ordinarily prudent and reasonable man to believe that it might give rise to a claim for damages." Under the same reasoning, the District Judge concluded that the notice of the Acuff suits was not required because the negligence charged did not indicate liability within the coverage of Michigan Mutual's policy. In addition to the Heyburn case, the District Judge cited: Southeastern Telephone Co. v. Fidelity & Casualty Co. of New York, 272 Ky. 82, 113 S.W.2d 871; 18 A.L.R.2d 478; Dunn v. Travelers Indemnity Co., 123 F.2d 710 (C.A. 5); Greyhound Corp. v. Excess Insurance Co. of America, 233 F.2d 630 (C.A. 5).

■ Considering the history of the subject matter out of which arises this case, which we have heretofore detailed in some length, and the authorities, we are in accord with the findings and conclusions of the District Judge concerning the notice requirements of the policy, not only for the reasons assigned by the District Judge but for the reasons that will hereinafter appear.

■ We now reach the principal question in the case, that is, did the Michigan Mutual policy cover the accident resulting in Mr. Acuff's injuries.

It does not require the citation of authorities to sustain the principle that an insurance policy must be considered as a whole in determining what it purports to cover.

The provision of the Michigan Mutual policy relative to the hazards covered, so far as this investigation is concerned, is found in Item 7 of the Declarations and is as follows:

"Item 7. Description of Hazards. (a) Premises—Operations. All Premises and Operations Tank Building-metal-shop Clerical Office Employees N. O. C."

By the Insuring Agreements of its policy, Michigan Mutual contracted, "subject to the limits of liability, exclusions, conditions and other terms of this policy:

 * * * * * *

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of liability imposed upon him by law * * * for damages * * * because of bodily injury * * * sustained by any person or persons and caused by accident."[2]

Exclusion (a) of the policy expressly provides:

"EXCLUSIONS

"This policy does not apply: (a) * * * to the ownership, maintenance or use, including loading or unloading, of * * * automobiles while away from such premises or the ways immediately adjoining, * * *."

In this case there is no difference in construing the policy to cover "Operations" only on Service Welding's premises and an interpretation that it is not so limited whereby Exclusion (a) applies. We will proceed with the decision in this case in the manner as presented by the parties, to-wit: Exclusion (a) does apply.

There is scant persuasive authority upon the question presented,[3] presumably because such occurrences rarely happen or holders of such policies do not consider incidents of this kind covered.

The principal case relied upon by Service Welding and Great American in the court below and here is the case of Youghiogheny & Ohio Coal Co. v. Employers' Liability Assurance Corporation, Ltd., (D.C.Minn.1953), 114 F.Supp. 472, affirmed sub nom. Employers' Liability Assurance Corporation, Ltd. v. Youghiogheny & Ohio Coal Co. (8th Cir. 1954), 214 F.2d 418. The District Judge distinguished between the holding in the Youghiogheny case and the case under consideration. He announced that the policy in the Youghiogheny case was insurance against a hazard while the insurance in this case was insurance against an accident, that the accident occurred away from the premises and was excluded by Exclusion (a). For these reasons he sustained Michigan Mutual's motion for summary judgment and dismissed the case.

The companion provisions of the policy in the Youghiogheny case with those in the Michigan Mutual policy, heretofore set out, are:

The "Definition of Hazards" section is the following:

"Division 1—Premises—Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

The "Insuring Agreements" of the policy are as follows:

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, * * * because of bodily injury * * * sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined."

---

2. Quotations from policies in some instances stripped of immaterial words.

3. Plaintiffs-appellants cite: Lieberman v. New Amsterdam Casualty Company, 284 App.Div. 1051, 135 N.Y.S.2d 850; American Employers Insurance Co. v. Goble Aircraft Specialties, Inc. et al., 205 Misc. 1066, 131 N.Y.S.2d 393; Youghiogheny & Ohio Coal Co. v. Employers' Liability Assurance Corporation, Ltd., D.C., 114 F.Supp. 472, affirmed 8 Cir., 214 F.2d 418.
Defendant-appellee cites: American Forest Products Co., Inc. v. Lumbermen's Mutual Casualty Co., 235 App.Div. 458, 258 N.Y.S. 490; Berger Bros. Electric Motors, Inc. v. New Amsterdam Casualty Co., 178 Misc. 1053, 37 N.Y.S.2d 26; See Jeffries v. General Casualty Co., 46 Wash.2d 543, 283 P.2d 128; Hultquist v. Novak, 202 Minn. 352, 278 N.W. 524; Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7; and Employers Mutual Liability Ins. Co. v. Underwriters at Lloyd's, 177 F.2d 249 (7th Cir.); General Accident Fire & Life Assur. Corp. v. Woeffel et al., 7 Misc.2d 952, 161 N.Y.S.2d 794; Tidewater Associated Oil Co. v. Northwest Casualty Co., 9 Cir., 264 F.2d 879, 882.

The "Exclusion" in the policy is:

"Exclusions

"This policy does not apply: (a) under Division 1 of Definition of Hazards, to * * * vehicles of any kind * * * or the loading or unloading thereof, while away from the premises, unless specifically declared and described in this policy and premiums charged therefor."

We are of the opinion that the purport is the same in these provisions of the Employers' Liability Assurance Corporation's policy, discussed in the Youghiogheny case, and the like provisions in the Michigan Mutual policy.

While the insuring agreement of the Michigan Mutual policy does not have the words "and arising out of the hazards hereinafter defined," the insuring agreement necessarily means the activating of some one of the hazards defined in the Declarations. Certainly Michigan Mutual did not intend to indemnify the insured for all damages that insurer might become obligated to pay for bodily injuries that might arise from a hazard not described in the policy. The exclusions in the Employers' Liability policy, in the Youghiogheny case, by referring to Division 1 of the Definition of Hazards, had no more or no less significance than Exclusions (a) of the Michigan Mutual's policy. Both policies exclude operations of automobiles, including loading and unloading thereof, while away from the premises of the insured.

In the Youghiogheny case, the accident occurred during the unloading of a railroad car away from the premises of the insured, which was attributable to the negligence of the insured on the premises in accepting and using a defective freight car. In this case, the accident occurred during the unloading of a trailer away from the premises of the insured and is said to have been caused by the negligence of the insured on its premises in the improper loading of the trailer.

Thus, appellants insist that the Youghiogheny case should be followed and liability declared against Michigan Mutual.

We cannot interpret the pertinent provisions of the policy, considering it as a whole, as placing liability upon Michigan Mutual.

It is important first to know the meaning of the words "accident" and "hazard" as used in the policy.

The word "accident" is defined as an event that takes place without one's foresight or expectation, especially one of an afflictive or unfortunate character. Webster's New International Dictionary, 2d Edition; Webster's Collegiate Dictionary.

In this policy the word "hazard" is not used to mean a risk, a danger or a peril. The "Premises—Operations" described cannot be within themselves a risk, a danger or a peril. The word "hazard" as used in the policy must mean "the source of a risk." Webster's New International Dictionary, 2nd Edition; Webster's New Collegiate Dictionary. Thus, a "hazard" is a danger or risk lurking in a situation or place. This definition of "hazard" is in common use, as one may speak of a sharp curve in a highway as a hazard; of steep steps as a hazard; and that life itself is a hazard.

This definition of "hazard" makes clear what the hazard is under "Description of Hazards" Item 7(a). It simply means all dangers or risks lurking in "All Premises and Operations Tank Building-metal-shop Clerical Office Employees N. O. C."

Having in mind the meaning of these words, "accident" and "hazard," it is quite apparent that the Michigan Mutual policy does not insure against hazards or insure against accidents. Certainly, the insurer would not be required to pay only because an event takes place without one's foresight or expectation, nor would it be required to pay the insured for only a danger or risk lurking in a situation. While it might be commonly said that insurance is against a

618

hazard or against an accident, actually the insurance is against a money loss for all sums the insured shall become obligated to pay.

The Michigan Mutual policy matured when the danger lurking in the hazard developed into an active agency causing injury. Thus, it matured when the occurrences recited in the insuring agreement all happened; that is, when the insured became obligated to pay damages by reason of liability imposed upon it by law for bodily injury caused by accident.

■ Certainly a wrongdoer is responsible for injuries directly caused by his wrongdoing, whenever or wherever such injuries occur, but this principle in nowise affects the rights of insurers to contract to indemnify under specific conditions. For example, a policy may contain provisions rendering the insurance company liable only for injuries occurring at or on a certain place.

■ Under the terms of the insuring agreement, three things must happen before the insurer must indemnify the insured, to-wit: (1) The insured must become obligated to pay by reason of a liability imposed upon him by law, (2) because of bodily injury and (3) caused by accident.

The conduct of an insured may cause bodily injury by accident but not render the insured obligated to pay by reason of liability imposed upon him by law. The insured might become obligated for a liability imposed upon him by law for damages, but it could be for something other than bodily injury, such as damages for property or character or otherwise.[4] If there be willful or wanton negligence causing bodily injury, then the terms of the insuring agreement are not met because the injury was not caused by accident.[5]

Because the bodily injury and the accident are not disputed would not withdraw these provisions from the insuring agreement. It would simply mean that only one element, to-wit, actionable negligence would be in controversy. In another case, the controversy might be whether there was bodily injury and, still in another, whether the injury was caused by an accident. In other words, a claim could be denied on any one of three grounds, (1) because there was no negligence; (2) because there was no bodily injury; (3) because there was no accident (injury willfully caused).

■ We are of the opinion that a fair construction of the policy requires that all events or occurrences set out in the insuring agreement must happen on the premises of the insured in order to meet the conditions whereby insurer is required to indemnify the insured for the sum paid for damages.

Only the liability imposed by law, the loading of the truck, transpired on the premises, the accident and the bodily injury occurring a long distance therefrom. Under these conditions and considering the insuring clause and Exclusion (a), we conclude that Michigan Mutual is not required to pay any part of the sum used in settling Mr. Acuff's claim.

This construction is borne out by the fact that it appears the insurance was sold and bought with the intention of covering injuries occurring on the premises, that is, at least as to automobiles, the creation of liability and the bodily injury caused by accident must all occur on the premises of Service Welding. The

---

4. Example: The failure to furnish heat in an apartment, resulting in the sickness and death of a child, was not a bodily injury. Jackson v. Employers' Liability Assur. Corp., 139 Misc. 686, 248 N.Y.S. 207, affd. 234 App.Div. 893, 254 N.Y.S. 1010, affd. 259 N.Y. 559, 182 N.E. 180.

5. 29 Am.Jur., Insurance § 1359; Sontag v. Galer, 279 Mass. 309, 181 N.E. 182; Graustein & Co. v. Employers' Liability Assur. Co., 214 Mass. 421, 101 N.E. 1073; Bowen v. Lloyds Underwriters, 339 Mass. 627, 162 N.E.2d 65; See Young v. Morrall, 359 Mich. 180, 101 N.W.2d 358.

fact that Service Welding knew about the accident and all the details soon after it happened and did not notify Michigan Mutual strongly indicates that Service Welding had no impression that the kind of accident occurring to Mr. Acuff was covered by Michigan Mutual. It is to be remembered that almost a year passed before a law suit was instituted by Mr. Acuff pointing out the particular negligence he claimed.

The District Judge found, and so do we, that during this time Service Welding acted as an ordinarily prudent man in failing to realize that Michigan Mutual's policy might cover the Acuff accident and injuries. [But we go further and believe that Michigan Mutual was justified in failing to realize that the policy did not cover the Acuff accident, for actually it did not.]

The premium charged on the Michigan Mutual policy was relatively low considering that the minimum insurance was $100,000, which reflects that the risks were small. From this it is fair to infer that the protection bought and sold was limited and was not intended to extend to injuries occurring more than one hundred miles from the premises.

Also, it is pointed out that Service Welding had bought and had in effect an automobile liability policy from Great American. One would think that Service Welding did not intend to buy double coverage.

 The action of the District Judge in granting Michigan Mutual's motion for summary judgment and dismissing the case was entirely correct, although our reasoning therefor may be somewhat different. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36.

The judgment of the District Court is affirmed.