## LYMAN LUMBER & COAL COMPANY v. TRAVELERS INSURANCE COMPANY.[1]

December 15, 1939.

No. 32,249.

*Brill & Maslon,* for appellant.
*Hoke, Cobb & Janes,* for respondent.

GALLAGHER, CHIEF JUSTICE.

In an action on public liability insurance policies, the trial court made findings and conclusions favorable to defendant. From a judgment entered pursuant thereto, plaintiff appeals.

Lyman Lumber & Coal Company, plaintiff herein, operated places of business at Deephaven and Excelsior, this state. These towns are only a few miles apart. About February 29, 1936, one

[1]Reported in 289 N. W. 40.

William Frederick Hullsiek, a resident of Deephaven, ordered from the company a ton of Pocahontas coal. Delivery was made from the Excelsior yard. In April, 1936, Hullsiek brought two actions against the company, one in his own behalf and one in behalf of his minor son, to recover damages for injuries alleged to have been sustained by the son, ten years of age, as the result of the explosion of fuse caps containing dynamite delivered in the coal.

During and prior to these times, two public liability policies, issued by defendant to plaintiff and identical in form save that one covered operations at the Deephaven yard and the other operations at the Excelsior yard, were in force and effect. The company promptly tendered the defense of the Hullsiek cases to the insurer, claiming to be protected by the policies against the asserted causes of action. The insurance company, after investigation, took the position that the policies did not afford coverage and declined to defend. The lumber company thereupon successfully defended the suits and brought this action to recover the sums expended by it in so doing.

We are called upon to construe the policies. Two questions are raised: (1) Assuming the insurer was obliged to defend the suits only if the injury alleged in the Hullsiek complaints was one against liability for which it would be bound to indemnify the assured, was the insurer under a contractual obligation to defend the actions here involved; and (2) was the insurer bound to defend these actions even though it would not have been bound to indemnify in the event that liability was found?

Based on the same facts (which we must for present purposes accept), the Hullsiek complaints allege in effect that Hullsiek purchased a ton of Pocahontas coal from the assured, who delivered and unloaded the same in the former's coal shed a few days before the accident here involved; that in so doing the assured carelessly and negligently delivered coal containing dynamite caps to plaintiff and failed to remove said caps or warn Hullsiek of the presence thereof—such negligent acts and omissions being done when

the assured knew or should have known that the caps were attractive to children and dangerous and that Hullsiek's children had access to the coal; that "by reason of said explosion, caused and occasioned by the carelessness and negligence of defendant, as herein stated, the said minor son, Donald Frederick Hullsiek, was grievously and permanently injured"; that "while plaintiff's said minor son, * * * was rightfully and lawfully in plaintiff's said coal shed and in pursuance of his customary duty of carrying a pail or scuttle of the said Pocahontas coal from said coal shed into the home or residence of plaintiff, * * * [he] * * * came into the possession of several said fuse caps and without knowing what they were and without any way of understanding or knowing their dangerous character or their contents, one of the said fuse caps exploded in the hands of plaintiff's said minor son"; that the father in the one case (and the son in the other) were damaged thereby.

The applicable provisions of the policies read:

"The Travelers Insurance Company,
"Hartford, Connecticut,
"(Herein Called the Company)

"Does Hereby Agree with the Assured, named in the Declarations made a part hereof, as follows:

"I. To indemnify the Assured against loss by reason of the liability imposed upon him by law for damages because of bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons except those employed by the Assured or those to whom the Assured may be held liable under any Workmen's Compensation Law.

"This indemnity subject to the exclusions hereinafter expressed shall apply only

"(1) * * *

"(2) * * *

"(3) in so far as such injuries occur elsewhere [than on the Insured Premises] if caused by the disclosed business operations conducted on the Insured Premises described in said Declarations,

or by employees of the Assured engaged in such operations who are required in the discharge of their duties to go off the Insured Premises;

\* \* \*

"III. The Company further agrees:

"1. To serve the Assured \* \* \* (b) upon notice of such injuries by such investigation, or by such negotiation or settlement of any resulting claims, as may be deemed expedient by the Company;

"2. To defend for the Assured any suit seeking damages for such injuries, even if such suit is groundless, false, or fraudulent;

\* \* \*

"IV. This agreement shall exclude any obligation of the Company for such injuries if caused by

\* \* \*

"3. (a) any employee of the Assured while driving, using, loading or unloading any vehicle elsewhere than upon the Insured Premises, or (b) the installation, removal, maintenance, or mechanical demonstration of goods or products elsewhere than upon the Insured Premises unless such operations are properly disclosed in Division 2 of Item 3 in the Declarations, or (c) the possession, consumption, or use elsewhere than upon the Insured Premises of any article manufactured, handled, or distributed by the Assured unless covered hereunder by written permit endorsed on this Policy."

Under "Declarations" we find Item 3, which reads:

"Item 3. Specified locations of all factories, shops, yards, buildings or other workplaces of the Assured, by Town or City, with Street and Number (herein called the Insured Premises) DEEPHAVEN, MINNESOTA

"All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above as declared in each instance by a disclosure of estimated remuneration of employees under such of the following Divisions as are undertaken by the Assured. 1 All

operations upon the Insured Premises. 2 Operations not on such premises.

"Remuneration of Executive Officers not performing duties of superintendent, foreman, or workman, remuneration of clerical office employees, and remuneration of drivers and chauffeurs not specifically included in Division 1 below shall be excluded without effect upon the protection afforded by the Policy.

| "Classification of Operations | Estimated Total Annual Remuneration | Rate per $100 of Re- muneration | Estimated Premium |
| --- | --- | --- | --- |
| 1. Fuel and Material Dealers— N. O. C.—no second-hand building materials or lumber—including local managers; Drivers' and Chauffeurs' Helpers #2487 | 1,800 | .15 | |
| Executive Officers performing duties of superintendent, foreman or workman. | | | |
| 2. Installation, removal, maintenance or mechanical demonstration of goods or products, classified as Outside Salesmen, collectors and messengers (wherever engaged) who do not deliver merchandise 8742 | | | |

Minimum Premium for this       Minimum
Policy shall be $12.50      Estimated Advance Premium  $12.50"

■ Apart from the exclusions, it can be said that the policy covers the accident here involved. There were several causes of the accident, one of which was the delivery of coal containing dynamite caps to the Hullsieks. The delivery was made by an employe of the assured required in the course of his duties to go

off the insured premises, and the accident occurred elsewhere than on such premises. Subdivision 3 of the indemnity clause, *supra*, provides coverage for such cases.

Included among the exclusions to which the indemnifying clause was expressly made subject is section IV, subd. 3(c), excluding, as we have seen *(supra)*, injuries caused by the possession, consumption, or use elsewhere than upon the insured premises of any article manufactured, handled, or distributed by the assured unless covered by written permit endorsed on the policy. But for the possession and use of the coal containing dynamite caps by the Hullsiek boy, there would have been no injury. Consequently, such possession and use was a cause of the accident. The coal containing dynamite caps was distributed by the assured. Were it otherwise, there would be no coverage under the policy even apart from the exclusion. The possession and use was elsewhere than on the insured premises. No written permit was attached to the policy, and there is nothing in the contract, typewritten or otherwise, which can be regarded as such a permit. We conclude that this exclusion saves the insurer from liability.

Biwabik Concrete Aggregate Co. v. U. S. F. & G. Co. 206 Minn. 239, 288 N. W. 394, can easily be distinguished. In that case a provision typewritten into the policy conflicted with an otherwise controlling exclusion contained in the policy form. The conflict was resolved in favor of the inserted provision because of the rule that the parties must have so intended. No such conflict is to be found in the case before us.

Nor do we find anything in the declarations contained in the policy either adding to the coverage clause or inconsistent with subd. 3(c) of the exclusions. They specifically refer to operations conducted at or from the location referred to in the policy, as declared in each instance by a disclosure of estimated remuneration for employes under the following divisions undertaken by the assured: (1) All operations on the assured premises and (2) operations not on such premises. The classification of operations includes drivers and chauffeurs under (1) but contains no disclosure

of estimated remuneration under (2). The negligent act of the assured's driver (delivering coal containing dynamite caps) was an operation not on the insured premises. Therefore these declarations and inserted provisions do not alter the interpretation previously given the contract.

■ We come now to the second question. As reference to the provisions of the policy set out above will disclose, the section obligating the insurer to defend (section III) appears in the contract before the exclusionary provisions (section IV). Also, while the indemnifying provision is expressly made subject to the exclusions, no similar express reference is to be found in section III. Upon these facts, appellant premises its claim that the exclusionary section does not modify the agreement to defend. The argument is ingenious but not persuasive. The words "such injuries" appearing in section III(2) (the agreement to defend) refer to injuries against liability for which the insurer promises to indemnify. The latter being limited by the exclusionary clause, it follows that the agreement to defend for the assured any suit seeking damages for such injuries is likewise so limited.

Minnesota Elec. Distributing Co. v. U. S. F. & G. Co. 173 Minn. 114, 216 N. W. 784, is not inconsistent with these views.

Affirmed.