## EMPLOYERS MUT. LIABILITY INS. CO. OF WISCONSIN v. UNDERWRITERS AT LLOYD'S.

### No. 9813.

### United States Court of Appeals Seventh Circuit.

### Oct. 18, 1949.

Maxwell H. Herriott, Milwaukee, Wis., E. L. Wingert, Madison, Wis., Charles B. Quarles, Milwaukee, Wis. (Mendes & Mount, Arthur C. Muller, Jr., New York City, of counsel), for appellants.

Kenneth P. Grubb, Norman C. Skogstad, Milwaukee, Wis., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

Employers Mutual Liability Insurance Company, a Wisconsin corporation (plaintiff, hereinafter referred to as Employers Mutual), on June 22, 1941 issued to Chesapeake Camp Corporation (hereinafter sometimes referred to as the insured or assured), a Virginia manufacturer and distributor of paper, a Blanket Liability Insurance Policy which defined coverage under Secs. I and II. Sec. I was subdivided into "Coverage A—Bodily Injury Liability" and "Coverage B—Property Damage Liability." Sec. II, designated "Assumed Liability, Products Liability," provided: "Coverage A and Coverage B shall include coverage for liability assumed by the insured under any contract or agreement in force at any time during the policy period, and also for liability arising out of the possession, employment, consumption, handling, or use of any merchandise or product manufactured, sold, handled or distributed by the insured."

Employers Mutual reinsured its liability under Coverage A and B of Sec. I with

Employers Reinsurance Corporation of Kansas City. It reinsured its products liability under Sec. II with Underwriters at Lloyd's (defendants, hereinafter referred to as Lloyd's). The reinsurance contract issued by Employers Reinsurance Corporation of Kansas City specifically excluded "products liability coverage reinsured with London Lloyd's." While Lloyd's reinsurance contract (sometimes called a treaty) did not specifically exclude plaintiff's liability under Coverage A and B of Sec. I, it undoubtedly was intended to cover only plaintiff's liability under Sec. II, the products provision. Each of the reinsurance contracts contained certain limitations regarding the amount of liability assumed by each reinsurer, which we do not regard as here material.

Employers Mutual paid a judgment obtained against it on October 5, 1945 in a New York court, for damages arising out of the death of one John Gunick. The facts with respect to the death of John Gunick are briefly as follows. In filling an order for a wholesale paper broker, employees of Chesapeake Camp Corporation loaded a freight car in Franklin, Virginia, with a number of 500-pound rolls of paper, sealed the freight car and stamped the bill of lading, "shipper's load and count," said wholesale paper broker being designated the shipper. On May 13, 1943, John Gunick, employed by the Gross Trucking Company of New York, drove a truck to the Harlem River railroad yards in New York to unload these rolls of paper for the consignee. Gunick was killed when one of the 500-pound rolls of paper fell on him as he opened the door of the freight car. The jury found that the rolls of paper had been negligently loaded by the employees of Chesapeake Camp Corporation in that they failed to band and secure them properly in the freight car. As noted, the judgment in favor of the estate of John Gunick was satisfied by Employers Mutual.

The instant action by Employers Mutual against Lloyd's is founded upon the premise that plaintiff was liable under the "Products Liability" coverage, and that such liability was reinsured by Lloyd's. In making this contention, plaintiff does not dispute, as we understand, that it was or might have been liable under "Coverage A—Bodily Injury Liability," of Sec. I. It asserts, however, that such a premise, if it exists, is immaterial because in any event Lloyd's is liable under "Products Liability," as defined in Sec. II. On the other hand, Lloyd's contend that the damages which gave rise to plaintiff's liability were not covered or included in the "Products Liability" provision, and that this was the sole liability which they reinsured.

We are not perplexed with any factual dispute. The question as to Lloyd's liability is one of law and involves the construction to be given or the interpretation to be placed upon the language of the "Products Liability" provision. This follows from the basic obligation of Lloyd's which, so far as here material, reads: "This contract reinsures the Company [Employers Mutual Liability Insurance Company] in respect of all policies written by them covering Products Liability as defined in such policies (including such Products Liability as may be covered by the so-called Optional Full Coverage Public Liability Policy) * * *." The critical and pertinent language of the "Products Liability" clause (heretofore quoted in full) is, "liability arising out of * * * handling * * * of any merchandise or product * * * handled or distributed by the insured."

We confess that we have some difficulty in following Lloyd's reasoning as to the interpretation sought to be placed upon this provision; however, as we understand, their main point is that Employers Mutual was not liable under this provision because Gunick did not handle the roll of paper which caused his death. In their brief, after conceding that the Chesapeake Camp Corporation and Employers Mutual as its insurer were liable for damages resulting from such death, they state: "However, since John Gunick never had *possession* of, never *employed,* never *consumed,* and never *handled* or *used* the roll of paper which caused his death, the liability of Employers Mutual by the express terms of its own insurance policy did not arise from products liability." Thus, Lloyd's theory appears to be that Employers Mutual was

not liable under the "Products Liability" provision for the negligent "handling" of the roll of paper by the employees of the Chesapeake Camp Corporation (the insured) or for negligence in connection with a roll of paper "handled or distributed" by the insured. And we suppose the converse of the statement lastly quoted is that Employers Mutual would be liable if the roll of paper had been handled by Gunick.

Lloyd's theory is further emphasized by the following statement in their reply brief:

"The conditions precedent to products liability which must exist under Employers Mutual policy are as follows:

"1. The product in question must be one manufactured, sold, handled or distributed by the insured;

"2. The injury must arise from the possession, employment, consumption, handling or use of the product in question;

"3. The injury must arise from a defect in the product;

"4. The defect must be attributable to a breach of a duty imposed by law upon the insured or its employees."

Test 2 immediately poses the question as to who must do the handling of the product in order to create a liability. Does it include an employee of the insured or is it restricted exclusively to a third person, as argued by Lloyd's? We think Lloyd's theory is not tenable. The provision provides for handling or handled "by the insured." If liability attached only to the handling of a product or when it was handled by a third person or someone other than an employee of the insured, what is meant by the words "by the insured?" By use of the word "defect" in tests 3 and 4, a limitation is sought to be placed upon the coverage which its language does not justify. The word "defect" does not appear in the language employed. It may be that damages occasioned by defective merchandise or products would be covered, but we think it is not so limited.

The issue is also accentuated by a hypothetical illustration stated in the brief of Employers Mutual as follows: "Assume that a spring loaded toy were improperly packaged so as to have the spring under tension. Assume that a child in cutting the string to unwrap the package was injured when the spring was released. Such a hazard would necessarily fall under any definition of products liability." As to this illustration, Lloyd's in their reply brief state: "The product would qualify under Test 1. The injury would meet Test 2 since the product was in the possession of and was handled by the child. Since the toy 'was improperly packaged so as to have the spring under tension', the injury would meet Tests 3 and 4. The injury would be covered by products liability." Thus, both parties agree that there would be a products liability under the hypothesis stated. Under Lloyd's theory, however, there would be a failure to meet Test 2 if the spring had been released and the child injured prior to the moment he started to unwrap the package. One second there is no coverage and the next second there is, depending upon whether the child takes hold of or handles the package. We think there would be coverage in either event because the injury was the result of the negligent manner in which the toy was handled and distributed by the manufacturer.

■ It is conceded that Employers Mutual would be liable for injuries sustained by third persons as a result of the negligence of the insured's employees under Coverage A, Sec. I, relative to bodily injury. It does not necessarily follow, however, that it is not liable under the "Products Liability" provision. These two provisions are not mutually exclusive. Sec. II provides: "Coverage A * * * shall include coverage for liability assumed by the insured under any contract or agreement in force at any time during the policy period * * *." We understand this to mean that damages for liability incurred under Sec. II, including "products liability," are recoverable under Sec. I. So the fact, if such it be, that Employers Mutual was liable under Sec. I (A) does not necessarily relieve it from liability under the "Products Liability" provision, and if it is liable under the latter provision, it follows that Lloyd's are liable.

We think Lloyd's liability becomes even more apparent when the question is approached from another angle. Suppose the policy issued by Employers Mutual to Chesapeake Camp Corporation had omitted Sec. I and had insured the latter only against damages arising under Sec. II, including the "Products Liability" provision. In our view, there can be little if any room for doubt but that Employers Mutual would have been liable to its insured under such provision for damages occasioned by the death of Gunick, and it is certain that if there was any doubt or ambiguity in such insuring clause, the insured would have been entitled to call to its aid the familiar rule that such ambiguity or doubt should be resolved against Employers Mutual. It appears logical to think, as was conceded in oral argument, that Lloyd's liability to Employers Mutual beyond $2500, the amount excluded from coverage, is precisely the same as that of Employers Mutual to its insured, under "Products Liability." In other words, Lloyd's by their reinsurance contract stepped into the shoes of Employers Mutual to the extent of the latter's liability to its insured. If, as we think, Employers Mutual would have been liable to its insured, it follows that Lloyd's, having assumed such liability, are liable to Employers Mutual.

This brings us to Lloyd's contention that the court below erroneously resolved against them the ambiguity in the insuring clause. It is pointed out that the words defining "products liability" are those of Employers Mutual and that any ambiguity must be resolved against it. As already noted, as between Employers Mutual and its insured there can be no doubt but that the ambiguous language would be construed against Employers Mutual. It would be inconsistent, so we think, to resolve such doubt against Employers Mutual in favor of its insured and also resolve the same doubt against it when it seeks to recover from its reinsurer. To do so would be to create a hiatus whereby Employers Mutual while liable to its insured might not be able to recover from Lloyd's. We think the rule of construction must be invoked against Lloyd's not because they issued the reinsurance contract but for the reason that they assumed the liability of Employers Mutual, which liability encompasses, if necessary, the resolution of doubt against it.

The question for decision is difficult, but we are of the view that it was correctly decided below. The judgment is

Affirmed.