**EMPLOYERS' LIABILITY ASSUR.
CORP., Limited**

v.

**YOUGHIOGHENY & OHIO COAL CO.**

No. 14989.

United States Court of Appeals,
Eighth Circuit.

July 7, 1954.

Reginald Ames, St. Paul, Minn. (Cummins, Cummins, Hammond & Ames, St. Paul, Minn., on the brief), for appellant.

Mandt Torrison, St. Paul, Minn. (Bundlie, Kelley, Finley & Maun, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an action upon a liability insurance policy to recover damages alleged to be within the coverage of the policy. The defense is that the accident causing the damages involved was not covered by the policy because it was excluded by Ex-

clusions (a) and (d) thereof, and that there was no duty resting on the appellant to defend the action brought against the plaintiff to recover such damages.

Jurisdiction of the Federal Court is based upon diversity of citizenship of the parties and the amount involved.

The plaintiff, Youghiogheny and Ohio Coal Company, hereinafter referred to as the Coal Company, is an Ohio corporation with its principal place of business at the city of Cleveland. It is authorized to do business in the states of Wisconsin and Minnesota. The defendant-appellant is a corporation organized under the laws of Great Britain. The insurance policy involved was issued in Ohio and is, therefore, an Ohio contract, and it must be construed by the laws of that state. American Law Institute, Restatement of Conflict of Laws, § 346; Matusek Academy of Music, Inc., v. National Surety Corporation, 7 Cir., 210 F.2d 333. And the Ohio courts hold that a contract of insurance is made in the state where the last act is done which is necessary to complete the contract and bind the insured and the insurer. Equitable Life Ins. Co. of Iowa v. Gerwick, 50 Ohio App. 277, 197 N.E. 923, 926.

The alleged negligence occurred in Wisconsin and, insofar as the law of torts is involved, the law of the place where the tort occurred is controlling. Jonathan Woodner Co. v. Mather, D.C. Cir., 210 F.2d 868, 872.

The insurance company on December 31, 1948, made and delivered to the plaintiff coal company its Manufacturers' and Contractors' Liability policy covering the coal company's premises and operations at Superior, Wisconsin, as a coal, fuel, oil or wood dealer for a period of one year. So far as material here the insurance company agreed:

"I. Coverage A—Bodily Insured Liability

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined."

"II. Defense, Settlement, Supplementary Payments. It is further agreed that as respects insurance afforded by this policy the Company shall

"(a) defend in his name and behalf any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . ."

"Definition of Hazards

"Division 1. Premises—Operations

"The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

"Exclusions

"This policy does not apply:

"(a) under Division 1 of Definition of Hazards, to . . . vehicles of any kind other than hand trucks, push carts and bicycles, or the loading or unloading thereof, while away from the premises, unless specifically declared and described in this policy and premiums charged therefor; . . .

\*      \*      \*      \*      \*      \*

"(d) under Divisions 1 and 4 of the Definition of Hazards, to liability with respect to which insurance is or can be afforded under Division 3 of the Definition of Hazards; or to operations on or from other premises which are owned, rented or controlled by the Insured;"

"Definition of Hazards  \*  \*  \*

"Division 3. Products

"The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named Insured, if the accident occurs after

the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured; and operations covered under Divisions 1 and 4 of the Definition of Hazards, other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises."

In August, 1949, while the policy was in effect, the coal company at its premises in Superior, Wisconsin, accepted, prepared for loading and then loaded with coal a Pere Marquette freight car. The court found that the preparation for and the loading operation were all acts necessary and incidental to the use of the insured premises as a place for conducting its business as a coal dealer.

After the car was loaded it was delivered to the Great Northern Railway Company, and on the 29th of August, 1949, the loaded car was "spotted" on a siding at Princeton, Minnesota; and one Burnett, an employee of the consignee of the car, attempted to open one of the sliding doors of the car, and while he was attempting to do so, "the door of the car left its moorings and crashed down upon him injuring him severely."

Thereafter, in August, 1950, Burnett brought an action in the state court of Minnesota against the Great Northern Railway Company, the Pere Marquette Railway Company, the Chesapeake & Ohio Railway Company, and the coal company for personal injuries so received by him in the sum of $110,000, claiming that his injuries were the proximate result of the negligence of the defendants. The particular acts of negligence attributed to the coal company in Burnett's complaint were:

"That said coal company carelessly and negligently accepted said railroad freight car from its co-defendants without making a thorough inspection as to the condition of said car, prior to loading the same.

"That said coal company knew, or in the exercise of reasonable or ordinary care should have known, that said railroad freight car was in bad order and unfit for the transportation of coal. * * *

"That said coal company knew, or in the exercise of reasonable or ordinary care should have known that in the type of car furnished it by its co-defendants there is required to be erected and securely fastened a false door, so as to prevent the bulk coal from pressing against the outside sliding doors of said car.

"That said defendant coal company carelessly and negligently failed and neglected, either to install the false door or sheeting between the outside door and the bulk coal proper, or carelessly and negligently failed and neglected to properly secure said false door or sheeting so that said bulk coal would not bear its weight, in whole or in part, directly against the outside of [the] sliding door of said car."

The coal company promptly tendered the defense of the action to the insurance company. The defense was declined on the ground that Burnett's injuries were not covered by the policy because the accident alleged in his complaint was covered by Exclusions (a) and (d) thereof, supra. Attorneys for the coal company accordingly undertook its defense. During the course of the trial, upon advice of counsel, the case was settled for $45,-000, of which amount the coal company contributed the sum of $7,500. The coal company incurred an expense in the defense of that action in the amount of $4,-825.57, making its total expense the sum of $12,325.57, for recovery of which this action was brought. The defendant here conceded in the trial court that its liability would have been covered by the policy except for the two exclusionary clauses (a) and (d) thereof.

On this appeal the insurer contends that the court erred in finding and enter-

ing judgment for the coal company for two reasons only:

1. The accident to Burnett was not covered by the policy because of Exclusions (a) and (d); and

2. There was no duty resting on appellant to defend the action brought by Burnett against the coal company; and, therefore, it is not liable to reimburse the plaintiff coal company for attorneys' fees, costs and expenses in the trial of the Burnett case.

The second contention may be disposed of briefly. We, therefore, consider it first.

The policy provided "that as respects insurance afforded by this policy the Company shall

"(a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. * * *"

■ To support its refusal to defend the Burnett suit the appellant relies upon the decision of the Supreme Court of Minnesota in Lyman Lumber & Coal Co. v. Travelers Ins. Co., 206 Minn. 494, 289 N.W. 40. We need not decide whether the cited case is consistent with the decision of that court in Butler Bros. v. American Fidelity Co., 120 Minn. 157, 139 N.W. 355, 44 L.R.A.,N.S., 609, because on this point the law of Ohio is controlling since the policy here is an Ohio contract. Kansas City Life Ins. Co. v. Wells, 8 Cir., 133 F.2d 224. The precise question presented here was decided by the Supreme Court of Ohio in Bloom-Rosenblum-Kline Co. v. Union Indemnity Co., 121 Ohio St. 220, 167 N.E. 884, 886. In the cited case an automobile liability policy was involved. The suit against the insured was an action for damages caused by an automobile neither owned by the insured nor covered by the policy; but the provision of the policy was the same as that in the present case. The insured gave notice to the insurer of the commencement of the suit, and the insurer refused to defend. The insured de-

fended, won the case, and sued the insurer to recover his expense. The court held that the obligation of the insurer to defend a suit "whether groundless or not" matures when the action is brought and that it does not depend upon the result of the trial.

■ Applying that rule here, it is immaterial whether the trial resulted favorably or unfavorably to the insured; and it is necessary to affirm the judgment appealed from for the recovery of the costs and disbursements of the insured in the amount of $4,825.57, which is conceded to be a reasonable amount. See, also, Socony-Vacuum Oil Co. v. Continental Casualty Co., 144 Ohio St. 382, 59 N.E.2d 199.

■ We next consider, therefore, appellant's contention that the accident in which Burnett was injured was not covered by the policy because of Exclusions (a) and (d), supra.

The appellant contends: 1. The accident to Burnett was not covered by the policy because the policy, under Exclusion (a), does not apply to "vehicles of any kind * * * or the loading or unloading thereof, while away from the premises, * * *" in Wisconsin; and 2. The accident to Burnett was not covered by the policy because Exclusion (d) excludes products liability.

The appellee contends that the accident to Burnett was covered by the policy and Exclusion (a) is not applicable because: 1. The freight car was not a vehicle within the contemplation of the policy; and 2. The hazard insured against arose at the insured premises in Wisconsin and did not arise and was not created in connection with a vehicle or the loading or unloading thereof while away from the premises.

The court made findings of fact and conclusions of law and entered judgment for the insured appellee. The court also filed an opinion which was made a part of the findings. 114 F.Supp. 472, 475. The court's conclusion was expressed in the opinion as follows:

"The question of coverage is to be determined from the allegations in the complaint against the insured.

\*   \*   \*   \*   \*   \*

"Defendant's contention that the accident to Burnett was within exclusion (a) of the policy cannot be sustained. Defendant has failed to distinguish between the meaning of the word 'hazards' and the 'accident' or 'injury' resulting from such hazard. In Hough v. Contributory Retirement Appeal Board, 309 Mass. 534, 36 N.E.2d 415, 417, 418, this distinction has been clearly stated:

" 'An "accident" is an unexpected, untoward event which happens without intention or design, and a "hazard" is a danger or risk lurking in a situation which by chance or fortuity develops into an active agency of harm.'

"See also, Caminetti v. Guaranty Union Life Ins. Co., 52 Cal.App.2d 330, 126 P.2d 159, 163.

"The insuring agreement in the instant case insures against certain hazards, and insofar as the exclusions become applicable, they must exclude hazards, rather than injuries or accidents. Thus, exclusion (a) must be construed to apply to the nature and place of the hazard rather than to the place of an accident or injury. The negligence alleged by Burnett against this plaintiff was in the failure to properly inspect, and in accepting and using a defective freight car. This hazard necessarily arose at the insured premises and as an incident to their use and did not occur at the place of unloading a vehicle while away from the premises.

"With respect to defendant's contention that the products liability coverage which plaintiff could have, but had not, purchased would have granted it protection, the short answer is that if the injury to Burnett resulted from a defective freight car or in negligence in failing to discover and remedy such defect or even in the faulty preparation of the car prior to loading, as alleged by Burnett, no defective condition in the products handled by the plaintiff was involved. Certainly, the freight car was not a product of the insured."

The trial court, it will be observed, based its opinion upon the finding and conclusion that "The insuring agreement \* \* \* insured against certain hazards \* \* \* rather than injuries or accidents"; and that "Exclusion (a) must be construed to apply to the nature and place of the hazard rather than to the place of the accident or injury." Appellant contends and argues that in so finding the court erred; that the Pere Marquette freight car is a "vehicle" within the meaning of Exclusion (a) and that the accident to Burnett at Princeton, Minnesota, was not covered by the policy because that "accident to Burnett occurred \* \* \* while unloading away from the premises." In reply to this contention appellee contends that the freight car involved is not a "vehicle" within the meaning of the policy.

Webster's New International Dictionary defines "vehicle" as "That in or on which a person or thing may be carried from one place to another, esp. along the ground, also through the air; \* \* \* a means of conveyance."

In commenting upon this definition in United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219, 237, 59 S.Ct. 861, 870, 83 L.Ed. 1249, Mr. Justice McReynolds, speaking for the Court, said: "A wheelbarrow, a covered wagon, a 'Rolls-Royce', the patient mule, a 'Man of War', and possibly a Pullman car or Ocean Liner is a vehicle." Citing cases.

Appellant refers to the Minnesota Highway Traffic Act (Minnesota Statutes Annotated, sec. 169.01, Subdivision 2) which defines the word "vehicle" as "Every device in, upon, or which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks." And appellant contends that the

word "vehicle" has come to have such meaning only by statutory regulations governing the use of streets and highways.

Appellee contends that Exclusion (a) is not applicable, pointing out that by many statutes and decisions of the courts the word "vehicle" will not "ordinarily include locomotives, cars, and street cars, which run and are operated only over and upon a permanent track or fixed way, and will not be held to include them unless the context of the ordinance or statute clearly indicate an intention to do so." Conder v. Griffith, 61 Ind.App. 218, 111 N.E. 816, 818.

This question was not involved in the action brought by Burnett in the state court of Minnesota; and we agree with the trial court that a decision of the point here is not necessary on this appeal. The laws of Ohio and/or Wisconsin control the decision of this case. The liability of the appellant in this case depends upon whether Exclusion (a) refers only to "hazards arising or being created in connection with vehicles whether or not running exclusively upon rails."

The trial court held that Exclusion (a) does not apply to the action of Burnett against the coal company in the state court of Minnesota. The negligence of the coal company alleged in that case was the company's failure to inspect and in accepting a defective car. The hazard thus charged as negligence occurred at the insured premises in Wisconsin and not in Minnesota where the car was unloaded, so it is immaterial whether the freight car is held to be a "vehicle" or not within the meaning of the law.

Appellant's final contention is that the accident to Burnett at Princeton, Minnesota, was not covered by the policy because Exclusion (d) excludes "products liability."

Exclusion (d) reads: "This policy does not apply (d) under Divisions 1 and 4 of the Definition of Hazards, to liability with respect to which insurance is or can be afforded under Division 3 of the Definition of Hazards; or to operations on or from other premises which are owned, rented or controlled by the insured."

Division 3 covers: "The handling or use or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named Insured, if the accident occurs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured * * *."

The coal company was not insured under Division 3 of the policy. Exclusion (d) was, therefore, inserted for the protection of the appellant; and the question presented is one of construction of the policy.

Clearly the coal in the Pere Marquette freight car was a product of the insured coal company. The car was away from the company's premises in Wisconsin when the accident occurred. The contention of appellant is that Burnett was "handling" the coal at Princeton at the time the accident occurred.

■ The proper test as to whether or not there is coverage and whether it is the duty of the insurer to defend an action against the insured depends upon the claim made in the complaint against the insured. Socony-Vacuum Oil Co. v. Continental Casualty Co., 144 Ohio St. 382, 59 N.E.2d 199, 203; Bloom-Rosenblum-Kline Co. v. Union Indemnity Co., 121 Ohio St. 220, 167 N.E. 884.

In his complaint in the state court of Minnesota Burnett alleged:

"That on the 29th day of August, 1949, the plaintiff, in the course of his usual duties, was assigned the task by his superiors of unloading the said railroad freight car of its coal contents as the same stood on the sidetrack of the Great Northern Railway Company, in the position heretofore described, at Princeton, Minnesota. That while pursuing his duties and in attempting to open one of the sliding doors of said railroad freight car the said door, through the combined negligence of the defendants, was caused to leave its

moorings and crash down upon the plaintiff, greatly injuring him as more fully hereinafter appears."

In support of its contention that the injury to Burnett was the result of his "handling the coal" and that his injury resulted from such handling the appellant relies primarily upon the case of Employers Mut. Liability Ins. Co. of Wisconsin v. Underwriters at Lloyd's, 7 Cir., 177 F.2d 249. In the cited case the insurer assumed " 'liability arising out of the possession, employment, consumption, handling, or use of any merchandise or product manufactured, sold, handled or distributed by the insured.' "

The material facts in the cited case are that the insured received an order for paper from a broker in New York. The insured thereupon loaded a freight car at its premises in Virginia with 500-pound rolls of paper and shipped it to New York. One Gunick, an employee of a trucking company in New York, was sent to the railroad yards in New York to unload the paper for the consignee. As Gunick was opening the car door one of the 500-pound rolls fell upon and killed him. A jury found that the insured had negligently loaded the car, and a judgment was returned against the insured. The judgment was satisfied by Employers and it brought suit against Lloyds to recover on the ground that the situation was covered by the "products liability" clause in the reinsurance clause of the policy. The court held that Lloyds was responsible since it was charged and found that the paper negligently handled in the loading of the car by the insured was within the "products coverage" of the policy, even though Gunick did not handle or use the paper; in substance that is the negligent handling of the paper in loading it at the premises where it was loaded was the cause of the accident.

That case clearly is not in point because it was not the negligent handling of the product coal, in the loading of the car in Wisconsin in this case, but the negligence of the defendant in loading and shipping the coal in a defective car.

As pointed out by the trial court, "the allegations of Burnett's complaint with respect to the liability of this plaintiff [coal company] had nothing to do with the products of the insured . . . " We cannot say that the court erred in so holding.

The judgment appealed from must accordingly be, and it is hereby,

Affirmed.