**LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation**

v.

**HERCULES POWDER COMPANY, Appellant.**

**No. 11559.**

United States Court of Appeals
Third Circuit.

Argued June 16, 1955.

Decided July 11, 1955.

Rehearing Denied Aug. 9, 1955.

Marcus A. Rowden, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Leonard G. Hagner, U. S. Atty., Wilmington, Del., Melvin Richter, Washington, D. C., Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

William Prickett, Wilmington, Del., for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a district court decision in a suit for declaratory judgment. Liberty Mutual has sought a declaration that it was not liable to defend or to indemnify Hercules Powder Company on a policy issued by it. The district court agreed with that contention. D.C.D.Del.1954, 126 F.Supp. 943. Hercules brings the case here for review.

The facts are simple and undisputed. Hercules entered into a contract with the United States under the terms of which Hercules conducted experimental research for the Navy at the Allegany Ballistics Laboratory of Hercules at Pinto, West Virginia. In the course of this work Hercules purchased an aluminum tube from the Aluminum Company of America. At the Hercules laboratory the tube was squared at its ends and a plug was welded into each end. The tube was then used to plunge into a mass of molten explosive material and the process was repeated many times.

Thereafter Hercules sent the tube to Electro-Chemical Engineering and Manufacturing Company to have work done on it by the latter in its plant at Emmaus, Pennsylvania. At the conclusion of this work the tube was to be returned to Hercules. While it was being processed as directed by Hercules, it exploded, killing one man, injuring another and causing property damage. Suits were begun against Hercules. Liberty has denied its liability under the policy. Hence this lawsuit.

■■ The whole question in this case turns upon the interpretation of the insurance contract made between Liberty and Hercules. Several of the arguments made by Liberty we will readily concede without discussion. We do not take the view that all insurance companies are concerns who play with words to trap unsuspecting customers. We agree that we should not create ambiguities in order to find a reason for interpreting a contract against the insurance company. Bergholm v. Peoria Life Ins. Co., 1932, 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416. On the other hand, when a party chooses the language which he puts into a form contract, in case of doubt of its effect the general rule is that it is interpreted against him. Bergholm v. Peoria Life Ins. Co., supra. This is true of deeds and other documents as well as insurance policies. 3 Corbin, Contracts, § 559 (1951).

One side has talked to us about the "basic thrust" of the policy, the other the "overriding purpose" thereof. Hercules says the "basic thrust" is insuring against all of Hercules' possible liability under this contract with the Navy. Liberty says the "overriding purpose" is to exclude all accidents or events except those taking place at the Pinto, West Virginia, laboratory. We agree with neither party.

The insurance contract is headed "Comprehensive General Liability Policy." It starts out with the insuring agreements. These are stated on page 1 and are short and clear. Following this there are "Exclusions" and following the "Exclusions" there are "Conditions." Attached to these on a printed form are the "Declarations." Then, still on a printed form of Liberty's is a "General Endorsement For General Liability Policy." This has eleven provisions only one of which is important here but that one is very important. That is paragraph (a) of number eight. And it will be quoted in full in a moment.

Is the liability of Liberty limited to accidents occurring at the laboratory in Pinto, West Virginia? This argument is urged by Liberty and its argument points to the answer in the Declarations (item 4) giving the location of premises

"owned, rented or controlled by named insured." There is also called to our attention paragraph (b) of the Exclusions. This we had better quote.

"(b) except with respect to operations performed by independent contractors, to the ownership, maintenance or use, including loading or unloading, of (1) watercraft while away from premises owned, rented or controlled by the named insured, (2) automobiles while away from such premises or the ways immediately adjoining, or (3) aircraft;"

These statements, combined with a phrase in paragraph 8, are made the basis of the argument that all liability is limited to what happens in the laboratory at Pinto.

We do not find from the language any support for Liberty's conclusion. The very fact that, in the words quoted from paragraph (b) of the Exclusions, certain types of items are particularized tends rather to show that it was felt necessary to carve these out from what otherwise would be covered. The giving of the address of the premises owned by Hercules in Pinto, West Virginia, in item 4 of the Declarations, we do not think persuasive as an exclusionary provision. The language in the General Endorsement is discussed later. Of course, it will be conceded, that if Liberty's argument here is a valid one the case comes to an end, for the accident involved here took place in premises not owned nor controlled by Hercules.

Liberty urges at length and with great vigor what it claims is the effect of the language in the General Endorsement, paragraph 8(a). This is headed "Exclusion of Products Liability." Here it is:

"The policy does not apply
a. to the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured or on premises for which the classification is stated in the declarations as subject to this exclusion; * * *"

Does this language let Liberty out? It is of significance, we think, that argument for Liberty has pointed out the origin of what is now called "Products Liability." It comes, we are told, from the famous opinion by Judge Cardozo in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916 F, 696. The dispute there concerned the liability of a manufacturer for personal injuries resulting from a defect in the product to one not in privity of contract with the manufacturer. The case marked an advance in Tort law and the extension of liability to manufacturers was carried to suppliers of chattels as well. See Restatement, Torts, §§ 388 to 393. The very basis of this liability was the responsibility put upon one who sends goods out into the channels of trade for use by others. To the extent that the history of "products liability" is any criterion it is clear that it has no place with regard to a piece of equipment sent by a manufacturer to a laboratory for processing.

Liberty says that this tube was "goods or products * * * handled * * by the named insured." Therefore, it argues, it is excluded. What does the word "goods" mean? What does the word "handled" mean in this clause? Now, of course, this tube is a chattel and no doubt the contract for the sale of a batch of them would come under the provisions of the statute of frauds having to do with the sale of goods, wares and merchandise. Likewise, both Hercules and the Emmaus laboratory "handled" this tube.

Here we have a place where dictionary definitions help us very little because it is the dictionary's job to give all the different ways in which words are used. If a word or a phrase comes to have a definitely settled legal meaning then we

can apply a definite rule of law to its legal effect. At common law the words to "A and his heirs" created an estate in fee simple and they were the only words which would create that estate. But in general, as the great Holmes pointed out years ago, "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 1918, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372.

"To say dogmatically that we 'know what a word means' in advance of its utterance is nonsense. All we can know in advance is approximately what it will mean. After the utterance, we interpret what has been said in the light of both verbal and physical contexts, and act according to our interpretation * * *"[1]

We think Hercules is right in saying that the reasonable interpretation of the purpose of this clause is to avoid the type of products liability to which Liberty has called our attention. That is, that which begins with MacPherson v. Buick Motor Co. That liability is not in question here. This tube was a chattel owned by Hercules. We think it was clearly equipment being used in the conduct of this experimental work. If not equipment, it was simply a tool like a wrench or a jack or any other of the numerous pieces of paraphernalia about a laboratory or factory. Furthermore, it was not manufactured by Hercules in any sense when they squared the ends and put in a plug any more than a garage proprietor manufactures a jack if he shortens the handle.

■ Numerous cases have been cited to us.[2] This is a situation, however, where comments of courts on language not identical cannot help us much. And the reason for that is already apparent. Unless particular words have crystallized into a definite legal rule their meaning necessarily varies with time, place, occasion and the vocabulary of the user. We think that the provision in paragraph 8(a), quoted above, excluding products liability is not to be given the sweeping effect which is urged by Liberty.

We must therefore, reverse. Since it is agreed that there is no controverted question of fact aside from what the words in question mean, the directions will be for a judgment for the defendant in the declaratory judgment action.

McLAUGHLIN, Circuit Judge (dissenting).

I am satisfied that the judgment below should be affirmed for the reasons so well expressed by Judge Rodney in his opinion in the district court, D.Del.1954, 126 F.Supp. 943.

---

1. Language in Action, S. I. Hayakawa, p. 66 (Harcourt, Brace & Co., 1940).

2. Many of the cases cited to us we find are not very helpful because they clearly were concerned with a product and product liability in the MacPherson sense which is not involved in this case. See, e. g., Employers Mut. Liability Ins. Co. v. Underwriters at Lloyds, D.C.W.D. Wis.1948, 80 F.Supp. 353, affirmed 7 Cir., 1949, 177 F.2d 249 (large rolls of paper); Lyman Lumber & Coal Co. v. Travelers Ins. Co., 1939, 206 Minn. 494, 289 N.W. 40 (coal); Hultquist v. Novak (Ocean Accident & Guarantee Corp., Garnishee), 1938, 202 Minn. 352, 278 N.W. 524 (gasoline); Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 1937, 233 Ala. 518, 173 So. 7 (cosmetic).