Albert D. BONELL, individually, and Albert D. Bonell, doing business as Bonell Refrigeration Co., Plaintiff,

v.

GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Limited, an alien corporation, and Robert J. Bitts (realigned as plaintiff), Defendants.

No. 36375.

United States District Court
N. D. California, S. D.

Nov. 6, 1958.

---

Hardy, Carley & Thompson, Palo Alto, Cal., for plaintiff Bonell.

Crist, Peters & Donegan, Palo Alto, Cal., for plaintiff Bitts.

Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant General Acc. Fire & Life Assur. Corp.

OLIVER J. CARTER, District Judge.

Robert J. Bitts commenced an action for personal injuries in the Superior Court of the State of California, in and for the County of Santa Clara, naming as defendants Albert D. Bonell, individually, and Albert D. Bonell, doing business as the Bonell Refrigeration Co. (which parties will be referred to hereinafter collectively as Bonell). Bonell called upon his insurer, the General Accident Fire and Life Assurance Corporation, Limited, to defend the action, in accordance with the terms of an insurance policy. The insurer refused to so defend. Bonell then commenced an action for declaratory relief in the same court, naming both Bitts and the insurer as defendants.

Upon the timely petition of the alien insurer, the action was removed to the United States District Court for the Northern District of California, under the provisions of 28 U.S.C. § 1441. As it appeared from the face of the complaint that both Bitts and Bonell were residents of California, a hearing was had upon the question of jurisdiction. At the hearing it was determined that the interests of Bonell and Bitts were identical with regard to the issue at bar, and that a proper alignment of the parties in this Court would place Bitts alongside Bonell as a party plaintiff.

■ The plaintiffs Bonell and Bitts are both residents of the State of California, the defendant is incorporated under the laws of the Empire of Great Britain, and the amount in controversy exceeds the sum or value of $3,000; accordingly, there is the requisite diversity of citizenship, and the jurisdiction of this Court is founded upon 28 U.S.C. § 1332. This action for declaratory relief is based upon the discretion granted to the Court by 28 U.S.C. § 2201.

According to the allegations contained in Bitts' complaint for personal injuries, Bonell sold to Bitts a used ice box, together with a disconnected used refrigerator unit. It is claimed that at the time of the sale Bonell knew, or should have known, that Bitts intended to assemble these pieces, and that Bonell knew, or should have known, that the refrigeration unit was in a dangerous condition, in that the unit contained a charge, under pressure, of sulphur dioxide. It is further alleged that Bonell failed to warn Bitts of this condition, in spite of his knowledge of the danger involved; and that as a proximate result of the negligence of Bonell, Bitts was injured when the sulphur dioxide gas contained in the refrigerator unit exploded while he was assembling it with the ice box.

The parties have stipulated that a certain insurance policy was in effect at the time of the alleged accident. The plaintiff Bonell has admitted that he is a dealer who sells, handles and distributes new and used refrigeration equipment in the ordinary course of business; that he sold the refrigeration unit in question to Bitts; that the occurrence giving rise to the injury occurred after Bonell had relinquished possession of the unit to Bitts; and that the aforementioned occurrence occurred away from premises owned, rented or controlled by Bonell.

The parties have made cross-motions for summary judgment under the provisions of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Inasmuch as there is no genuine issue as to any material fact in the matter at bar, it appears to the Court that, on the basis of the record before it, the question is ripe for summary judgment.

The question here involved is whether an "Exclusion of Products Endorsement," which the parties have stipulated was a part of the policy in effect at the time of the accident, is sufficient, as a matter of law, to relieve the insurer from the duty of defending the action for personal injuries. This endorsement reads as follows:

*"Exclusion of Products Hazard*

"It is agreed that the policy does not apply to the products hazard as defined therein.

"This endorsement is subject to all the agreements, conditions and exclusions of the policy unless such agreements, conditions and exclusions are expressly modified or expressly eliminated hereby * * *."

In the policy is contained the following language:

"(c) Products Hazard. The term 'products hazard' shall mean

"(1) the handling or use of, the existence of any condition in or a warranty of any goods or products manufactured, sold, handled or distributed by or for the named insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented, or controlled by the insured or on premises for which the classification stated in section A(1) of the declarations or in the company's manual excludes any part of the foregoing; * * *"

The essence of the claim of the plaintiffs is that Bonell was under a duty to warn Bitts of the dangerous condition existing in the refrigeration unit. It is alleged that Bonell knew, or should have known, of the dangerous condition, and also that he knew, or should have known, that Bitts was inexperienced in assembling refrigeration equipment. Accordingly, the position of the plaintiffs is that Bonell failed to meet the standard of care required under such circumstances, and that the tortious act was committed at the time of the sale. Following this line of reasoning, they argue that they are not precluded by the "Exclusion of Products Endorsement" in the policy, because the wrongful act or failure to act occurred on Bonell's premises, before Bonell had relinquished possession of the equipment to Bitts, and not during the handling or use of the dangerous items.

They conclude that the resultant injury to Bitts was but the proximate result of Bonell's initial tort.

On the other hand, the argument of the defendant insurer is that the "Exclusion of Products Endorsement" in its policy specifically covers the factual situation set out in the pleadings. The principal contention is that the point upon which liability depends is the place where the accident occurs, and that here the accident occurred after Bonell had relinquished possession of the equipment, on premises other than Bonell's, and while Bitts was handling or using the dangerous items.

A number of cases have been cited which discuss similar insurance clauses. In Standard Accident Insurance Co. v. Roberts, 8 Cir., 1942, 132 F.2d 794, the insured was in the business of the sale and installation of furniture and fixtures. He sold a refrigerator to one Primm, and installed it in Primm's residence. Shortly after the insured had completed the installation of the refrigerator, gas escaped from the refrigerator connections and injured several persons. Judgments were obtained against the insured, who looked to the insurer. The insurer brought an action for declaratory relief, asking that the court declare that there was no liability on the part of the insurer under the policy; the petition was dismissed, but upon appeal the judgment was reversed.

The policy of insurance in question was similar to the one in the matter at bar. There was contained an exclusionary clause which exempted from coverage certain hazards under the heading of "Products or Completed Operations," which included

" ' *  *  *  The handling or use of or the existence of any condition in goods or products manufactured, sold, handled, or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured;

and the existence of any condition in premises or property, other than tools, uninstalled equipment and abandoned or unused materials, caused by operations of the named insured or his independent contractors, if the accident occurs after the completion or abandonment of such operation at the place of occurrence thereof and away from the premises owned, rented or controlled by the insured.' " 132 F.2d 794, 797.

The situation presented is strikingly similar to the one here at issue. The Circuit Court of Appeals for the Eighth Circuit held that under the provisions of such a policy of insurance, there would be no liability for an accident occurring after the insured had completed his installation of the refrigerator and relinquished control of it to the purchaser.

The defendants have also cited, as being in point, U. S. Sanitary Specialties Corp. v. Globe Indemnity Co., 7 Cir., 1953, 204 F.2d 774, another case dealing with a products hazard endorsement. In that case the plaintiff's salesman had applied a small portion of the wax that he was demonstrating to the court house floor. A day later a woman slipped and fell on that portion of the floor where the wax had been applied. She filed suit against the plaintiff, who called upon the defendant insurer to defend. The insurer refused, claiming that the accident arose after the "completed operation," and that the alleged negligence of the salesman could not be charged to the insurer under the conditions of the policy. The district court agreed with the insurer, and in affirming the judgment, the Court of Appeals for the Seventh Circuit stated:

"If the accident had been caused by the negligence of the salesman and had occurred while he was applying the wax, the insured would have been covered because in that case the accident would be considered as having arisen out of and having occurred during the operation.

"The plaintiff here could also have bought coverage for negligence which caused the injury after the operation had been completed. Since the plaintiff neglected to purchase this type of coverage, it must bear the burden attendant upon an accident which occurred, as in the instant case, after the operation was completed. The cost of indemnity insurance is determined by the hazards which the policy covers. It would be a gross injustice to the insurer to interpret into a policy coverage which the assured had not bought and for which the insurer had not been paid. (Citing cases.)" 204 F.2d 774, 777.

It is to be noted that in both Standard Accident Insurance v. Roberts, supra, and U. S. Sanitary Specialties Corp. v. Globe Indemnity Co., supra, the accidents in question arose from the product sold or produced by the insured. The defendant has cited Liberty Mutual Insurance Co. v. Hercules Powder Co., 3 Cir., 1955, 224 F.2d 293, 54 A.L.R.2d 513, which, though distinguishable, discusses the philosophy underlying the exclusion of products hazards endorsements in this type of insurance policy. There, after a judgment for the insurer in the district court, the Court of Appeals for the Third Circuit reversed the matter when it determined that the article which caused the accident, an aluminum tube, was not a product of the insured, and consequently could not come under the provisions of the exclusionary provision in the policy.

"It is of significance, we think, that argument for Liberty has pointed out the origin of what is now called 'Products Liability.' It comes, we are told, from the famous opinion of Judge Cardozo in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. The dispute there concerned the liability of a manufacturer for personal injuries resulting from a defect in the product to one not in privity of contract with the manufacturer.

The case marked an advance in Tort law and the extension of liability to manufacturers was carried to suppliers of chattels as well. See Restatement, Torts, §§ 388 to 393. The very basis of this liability was the responsibility put upon one who sends goods out into the channels of trade for use by others. To the extent that the history of 'products liability' is any criterion it is clear that it has no place with regard to a piece of equipment sent by a manufacturer to a laboratory for processing." 224 F.2d 293, 295

Just as Liberty Mutual Insurance Company v. Hercules Powder Co., supra, must be distinguished, so must the Court distinguish Employers' Liability Assurance Corp. v. Youghiogheny & Ohio Coal Co., 8 Cir., 1954, 214 F.2d 418, a case upon which the plaintiffs have placed much reliance. This was an action by the insured coal company against its liability insurer, which had refused to defend an action for personal injuries brought against the insured. The complaint alleged that the plaintiff in the personal injury action had been injured away from the premises of the insured when a door of a freight car, which the plaintiff was attempting to open, and which had been loaded by the insured with its coal fell upon the plaintiff. The complaint alleged that the insured had been negligent in failing to inspect the car, and in accepting and using a defective freight car. There was a provision in the policy similar to the one in the instant case. The policy provided that it did not apply to hazards arising from:

" 'The handling or use of or the existence of any condition in goods or products manufactured, sold, handled, or distributed by the named Insured, if the accident occurs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured; * * *' " 214 F.2d 418, 420.

The judgment for the insured was affirmed on appeal, where it was held that the negligence complained of actually took place on the premises of the insured. The distinction between Employers' Liability Assurance Corp. v. Youghiogheny & Ohio Coal Co., supra, and the matter at bar lies simply in the fact that in the former case the accident was not caused by goods or products of the insured, while in the present case the accident was caused by goods or products of the insured.

It is well-settled that a policy of insurance will be construed most strongly against an insurance company, Employers' Liability Assurance Corp. v. Youghiogheny & Ohio Coal Co., supra; City of Santa Monica v. Royal Indemnity Co., 157 Cal.App.2d 50, 320 P.2d 136, and that any uncertainty in an insurance policy will be resolved against the insurance company, Continental Gas Co. v. Phoenix Construction Co., 46 Cal.2d 423, 437, 296 P.2d 801, 57 A.L.R.2d 914. However, the Court may not ignore the contract of insurance, but must look to the language of the policy and derive some meaning and purpose from the language employed.

In this case, the plaintiffs cannot avoid the conclusion that the accident which took place was caused by refrigeration equipment which was admittedly sold to Bitts in the ordinary course of Bonell's business. There is no uncertainty or ambiguity in the language contained in the "Exclusion of Products Hazard Endorsement" which formed an integral part of the policy of insurance. The facts, as alleged in the complaint for personal injuries in the state court, fall squarely within the provisions of that endorsement.

Accordingly, summary judgment is awarded to defendant. Counsel for defendant is directed to prepare and present a judgment in accordance herewith.